IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MELVIN CHRISTOPHER CARTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-130 |
| | ) | (Formerly CR 112-176) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner Melvin Christopher Carter filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

        A.      **Indictment**

On May 9, 2012, the grand jury in the Southern District of Georgia charged Petitioner and two co-defendants in a nineteen-count indictment alleging marijuana distribution and money laundering conspiracies. United States v. Carter, CR 112-176, doc. no. 1 (S.D. Ga. May 9, 2012) (hereinafter "CR 112-176"). On June 6, 2012, the grand jury returned a twenty-five count superseding indictment adding a third defendant and again charging Petitioner in seven counts with distribution and money laundering conspiracies "[b]eginning in or about May 2011." Id., doc. no. 26. Petitioner faced a possible sentence of five years'

imprisonment on each of three drug conspiracy-related charges in Counts One, Two, and Three; twenty years on each of two money-laundering charges in Counts Ten and Eleven; and four years on each of two charges concerning use of communication facility to facilitate a felony in Counts Sixteen and Seventeen.

At the time of his indictment, Petitioner was on supervised release in another drug-related case, United States v. Carter, CR 102-006 (S.D. Ga. Feb. 11, 2002) (hereinafter "CR 102-006").  Petitioner absconded from supervision and was arrested on December 13, 2016, in Mexico on the warrant issued for the indictment. The Court appointed attorney Keith Johnson to represent Petitioner.  CR 112-076, doc. no. 172.

### B.     Agreement to Plead Guilty

A jury trial originally scheduled for February was continued until March 20, 2017. Id., doc. nos. 187-91.  On March 7, 2017, Petitioner signed a plea agreement.  Id., doc. nos. 193, 197.   On March 17, 2017, Petitioner pleaded guilty to the marijuana distribution conspiracy charge in Count One and the money laundering conspiracy charge in Count Ten. Id., doc. no. 195-97.  In exchange, the government agreed to dismiss all remaining counts, not object to a recommendation for a two-point acceptance of responsibility reduction, and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id., doc. no. 197, (Plea Agreement), pp. 5-6.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

[B]eginning in or about May 2011, the exact beginning date being unknown to the Grand Jury, and continuing until the date of the return of the Indictment in the above-styled case, in Richmond County, within the Southern District of Georgia, and within the Southern District of California, MELVIN C. CARTER, did knowingly and intentionally combine, conspire, confederate, and agree with others, including LAVON A. SEAWOOD, HASAN A.

2

DIXON, and ANTWUAN B. DENT, and with other unknown persons, to commit certain offenses against the United States, that is, to distribute and possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance. . . . (Count One).

. . .

[B]eginning in or about May 2011, the exact beginning date being unknown to the Grand Jury, and continuing until the date of the return of the Indictment in the above-styled case, in Richmond County, within the Southern District of Georgia, and within the Southern District of California, **MELVIN C. CARTER**, did knowingly and intentionally combine, conspire, confederate, and agree with others, including LAVON A. SEAWOOD, HASAN A. DIXON, and with other unknown persons, to knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce, which involved criminally derived property from specified unlawful activities described in Counts One through Five of the Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, ownership, control, and source of the proceeds of said specified unlawful activities, and knowing that the transactions were conducted in a manner to avoid the transaction reporting under State or Federal law, and while conducting and attempting to conduct such financial transactions, knew that the property involved in the transactions represented the proceeds of some form of unlawful activity. . . . (Count Ten).

Id. at 2-3.

By signing the Plea Agreement, Petitioner "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 8.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Mr. Johnson and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 10, 12.

At the change of plea, United States District Judge Dudley H. Bowen, Jr., found Petitioner was competent to enter a guilty plea if he so desired. Id., doc. no. 217, (Rule 11 Tr.), pp. 3-4. Petitioner testified under oath he had sufficient time to discuss his case with Mr. Johnson and was satisfied with counsel's preparation and handling of the case. Id. at 4-5. Judge Bowen reviewed the drug conspiracy and money laundering charges to which Petitioner was pleading guilty and the maximum prison terms of five and twenty years, respectively. Id. at 5-8.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 8-9. Petitioner confirmed no one had forced, threatened, or pressured him into pleading guilty. Id. at 11. In addition, Judge Bowen reviewed the appeal waiver and its limited exceptions, as well as the collateral attack waiver. Id. at 12-13. Further, Judge Bowen confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 13.

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, and Firearms. SA Rhodes described Petitioner's involvement with co-defendant Seawood in mailing drugs from California to Augusta and cash back to California. Id. at 14-16. SA Rhodes also described tracking money orders structured to stay below the $3,000 government reporting threshold. Id. at 16-

17. Petitioner agreed with SA Rhodes and confirmed he was guilty of, and wanted to plead to, Counts One and Ten. Id. at 18.

### C.     Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") setting Petitioner's Total Offense Level at seventeen, Criminal History Category at VI, and Guidelines imprisonment range at 51 to 63 months. PSI ¶¶ 49, 62, 91. Because Petitioner had two prior controlled substance convictions and was thus a career offender under U.S.S.G. § 4B1.1, his offense level was twenty, reduced by three for acceptance of responsibility. PSI ¶¶ 45-49. The statutory maximum term of imprisonment for Count One was five years, and twenty years for Count Ten. 21 U.S.C. §§ 846 & 841(b)(1)(D); 18 U.S.C. §§ 1956(a)(1)(B)(i) & (h); PSI ¶ 90.

Judge Bowen held Petitioner's sentencing for CR 112-176, as well as the revocation for CR 102-006, on August 9, 2017. CR 112-176, doc. no. 218 (Sent. Tr.). Judge Bowen confirmed Petitioner read and discussed the PSI with Mr. Johnson. Id. at 2. Petitioner did not object to the PSI concerning his prior criminal history and career offender designation under the Guidelines, and Judge Bowen adopted the factual statements of the PSI as his own findings of fact. Id. at 2-3. Mr. Johnson offered arguments in mitigation, noting Petitioner's family situation, age, acceptance of responsibility and comparable sentences of Petitioner's co-defendants. Id. at 3-4, 6-7. Mr. Johnson further requested Judge Bowen take into consideration Petitioner barely fell inside the fifteen-year window to qualify for career offender status. Id. at 4. Petitioner apologized for re-offending. Id. at 5-6.

Judge Bowen noted Petitioner's long criminal history dating back to 1990, his history of violations while on supervised release, and his receipt of a "crack reduction" on a prior

sentence.  Id. at 10.  Judge Bowen explained the difference in Petitioner's sentence as compared with his co-defendants was the result of a correct application of the Guidelines driven by Petitioner's flight from prosecution and multiple brushes with the law.  Id. at 10-11.  Judge Bowen imposed a sentence of sixty months' imprisonment on each count to which Petitioner pleaded guilty, to be served concurrently.  Id. at 11.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal regarding CR 112-176.  Judge Bowen imposed a thirty-six month sentence in the revocation proceedings to be served consecutively to the sixty-month sentence.  Id. at 21; CR 112-176, doc. no. 209; CR 102-006, doc. no. 39.

### D.     § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)     Counsel provided ineffective assistance in the pretrial phase of the case when he failed to:

(a) communicate with Petitioner and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial;

(b) conduct an adequate and independent pretrial investigation; and

(c) negotiate a more favorable plea deal.

(2)     Counsel provided ineffective assistance in the sentencing phase of the case when he failed to:

(a) review, discuss, and explain the PSI to Petitioner prior to sentencing;

(b) file substantive objections to the PSI; and

(c) object to a substantively unreasonable sentence.

(3)     Petitioner should not have been designated a career offender under the advisory Sentencing Guidelines.

(See generally doc. nos. 1, 1-1, 6.)

## II.     DISCUSSION

### A.     No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 1, p. 13; doc no. 1-1, p. 40; doc. no. 6, p. 8.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.   Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).   Because Petitioner's claims lack merit as a matter of law, or are otherwise barred from review in these proceedings, no evidentiary hearing is necessary, and Petitioner's request for one should be denied.

**B.** **Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask

only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a

failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 568 U.S. 966 (2012).   In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea.  Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted).   Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

**C.     Petitioner Is Not Entitled to Relief on the Pretrial Ineffective Assistance Claims in Ground One.**

Petitioner asserts Mr. Johnson provided ineffective assistance in the pretrial phase of the case when he failed to:  (a) communicate with Petitioner and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (b) conduct an adequate and independent pretrial investigation; and (c) negotiate a more favorable plea deal.  These claims are barred by the entry of a valid guilty plea, and in any event are devoid of merit.

      **1.**        **Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Ground One.**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . .

. must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Bowen informed Petitioner in clear terms of the charges to which he was pleading guilty, and Petitioner testified he understood the charges. Rule 11 Tr. 8-9. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 8-9. Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 11, 13.

Additionally, Judge Bowen informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Bowen explained the maximum five and twenty-year prison terms for conviction of the drug conspiracy charge and money laundering charge, respectively. Id. at 5-8. Finally, Petitioner also testified he had enough time to discuss the case with Mr. Johnson and was satisfied with his services. Id. at 4-5; see also Plea Agreement, p. 10 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); Id. at 12 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone

shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

At the Rule 11 hearing, Petitioner also admitted to the facts presented by the government as the factual basis for the plea.  Rule 11 Tr. 14-18.  This factual presentation included information concerning Petitioner's involvement with his co-defendant in mailing packages containing drugs from California to Augusta and packages containing cash back to California.  Id. at 14-16.  Further, money orders were structured to stay below the $3,000 government reporting threshold.  Id. at 16-17.  Petitioner stated to Judge Bowen he had no disagreement with anything SA Rhodes had recounted and confirmed his desire to plead guilty to Counts One and Ten.  Id. at 17-18.

Accordingly, Petitioner cannot validly claim his guilty plea was unknowingly or involuntarily entered or there was no factual basis established for the guilty plea.  Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  As Petitioner's plea was knowing and voluntary, his claims in Ground One are barred.

> **2.      Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit.**

In Ground One(a) and (b), Petitioner claims Mr. Johnson did not adequately investigate the case and communicate with Petitioner about the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial the case. Most difficult for Petitioner to overcome is his prior sworn assertions to Judge Bowen he had enough time to discuss the case with Mr. Johnson and was entirely satisfied with his preparation and handling of the case. Rule 11 Tr. 4-5; Plea Agreement, pp. 10, 12. These sworn assertions contradict his current claims that his meetings with Mr. Johnson prior to the guilty plea proceedings were devoid of substantive discussions about the merits of his case and did not include a discussion Petitioner would be waiving his appellate rights by pleading guilty. (Doc. no. 1-1, pp. 23-24.)

Petitioner blames Mr. Johnson for not pursuing an affirmative defense to the charges, but even now he offers no information about any potential defense and fails to specify information conveyed to Mr. Johnson that was not investigated. For example, Petitioner faults Mr. Johnson for failing to move the Court for a private investigator to independently investigate the case. (Id. at 27.) Yet he offers nothing the investigator could have pursued to provide a defense in a case delayed four years while Petitioner absconded to Mexico and his three co-defendants accepted plea agreements from the government. CR  112-176, doc. nos. 101, 109, 110.

These same sworn assertions to Judge Bowen belie Petitioner's contention Mr. Johnson did not discuss the merits of pleading guilty versus going to trial or adequately review the Plea Agreement. As described in detail above, Judge Bowen thoroughly reviewed the Plea Agreement at the Rule 11 proceeding, including the waiver of Petitioner's appellate

14

and collateral attack rights. Petitioner's signature on the Plea Agreement attests Petitioner "read and carefully reviewed this agreement with my attorney." Plea Agreement, p. 12. Moreover, Judge Bowen specifically reviewed the rights Petitioner was waiving by pleading guilty, including the appeal and collateral attack waiver provisions of the Plea Agreement prior to accepting the guilty plea, and Petitioner never asked any questions or otherwise suggested he did not understand the consequences of his guilty plea. Petitioner does not provide any specific factual information that either Judge Bowen or Mr. Johnson did not adequately review or pursue that would have changed the outcome of the case or caused him to go to trial rather than plead guilty, particularly in light of Petitioner's attestation of guilt at the Rule 11 proceedings.   Petitioner has shown neither deficient performance nor prejudice.

In Ground One(c), Petitioner asserts, without benefit of any detail, Mr. Johnson failed to negotiate a more favorable plea agreement, did not "correctly familiarize himself with the relevant facts of the case, case law, applicable Guidelines and potential consequences of a conviction," and failed to inform Petitioner correctly about these non-specific factors. (Doc. no. 1-2, p. 31.)   Had Mr. Johnson properly informed him, Petitioner alleges there is a reasonable probability he would have opted to go to trial or at least insisted on preserving his rights of appeal in the plea agreement. (Id.) Notably, Petitioner does not say he would have chosen to go to trial or plead guilty to all *seven* counts with which he was charged without a plea agreement, or that he was willing to give up his acceptance of responsibility reduction in the Guidelines calculation.

Even if the Court were to accept for the sake of argument Petitioner's claim he would not have accepted a plea deal had Mr. Johnson correctly prophesied his precise sentence, Petitioner cannot show the requisite prejudice. So long as the Rule 11 court correctly advises

15

a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines.  <u>See United States v. Wilson</u>, 245 F. App'x 10, 11-12 (11th Cir. 2007) (<i>per curiam</i>) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); <u>see also United States v. Herrington</u>, 350 F. App'x 363, 369 (11th Cir. 2009) (<i>per curiam</i>) (affirming district court refusal to allow withdrawal of guilty plea where court at plea hearing set forth maximum penalties and explained court not bound by counsel's sentencing estimates).

At the Rule 11 proceedings, prior to accepting the guilty plea, Judge Bowen reviewed the possible statutory penalty of five and twenty years of imprisonment, respectively.  Rule 11 Tr. 5-8.  The Guidelines sentence he received of sixty months was well below the statutory maximum of twenty years Petitioner faced for Count Ten.

As detailed by Respondent, (doc. no. 3, pp. 2-3, 6-7), and in the testimony of SA Rhodes to which Petitioner had no objection, (Rule 11 Tr. 14-17), the evidence against Petitioner was strong, and Petitioner offers no basis upon which Mr. Johnson could have bargained for a better deal.  A bald assertion some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice.  <u>Cummings v. United States</u>, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (collecting cases for proposition that conclusory, after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice).  As Petitioner cannot show prejudice, his claim fails.

**D.      Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Ground Two.**

Petitioner also asserts Mr. Johnson provided ineffective assistance at sentencing when he failed to:  (a) review, discuss, and explain the PSI to Petitioner prior to sentencing; (b) file substantive objections to the PSI; and (c) object to an unreasonable sentence.  All of these claims are belied by the record.

At sentencing, Judge Bowen asked Petitioner:  "Have you had the opportunity to read and discuss the Presentence Report and any addendum with your lawyer?"  Petitioner responded, "Yes, Sir."  Sent. Tr. 2.  Judge Bowen asked if there were any objections to the factual statements of the report, to which Mr. Johnson responded, "No, Your Honor."  Id. When asked by Judge Bowen if Petitioner had anything to say prior to sentencing, he simply apologized for re-offending and asserted he played a "very minimal role" in the criminal activities to which he pled guilty.  Id. at 5-6.  He never mentioned any confusion about the Guidelines or suggested any substantive issues with the information in the PSI.

Second, Mr. Johnson presented multiple arguments in mitigation.  Mr. Johnson emphasized Petitioner's family situation, age, and acceptance of responsibility.  Id. at 3-4, 6-7.  Moreover, Mr. Johnson explained Petitioner was career offender based on a conviction that barely fell within the fifteen-year window for counting prior offenses,[1] and pointed out Petitioner was pleading guilty to charges "almost exactly the same" as the charges to which two co-defendants pleaded guilty and received sentences of twenty-seven months.  Id. at 4. Of course, Mr. Johnson also had to concede Petitioner had a different criminal history than

---

[1]To the extent Petitioner asserts he asked Mr. Johnson to file a written objection to the PSI based on the career offender enhancement, as discussed in Part II(E)(3), *infra*, there was no valid basis upon which to make such an argument.  Nevertheless, Mr. Johnson still brought the issue to Judge Bowen's attention in his mitigation arguments.

his co-defendants.  Id.  Indeed, the government highlighted the differences in the criminal histories of the co-defendants and pointed out Petitioner's Guidelines calculation was higher because of his criminal history, flight to Mexico, and enhancement for obstruction of justice. Id. at 8.

Third, to the extent Petitioner complains about the reasonableness of his sixty-month sentence in CR 112-176 by arguing Mr. Johnson should have objected to running that sentence and the probation revocation sentence CR 102-006 consecutively, the contention is without merit.  Petitioner conflates the two sentences to argue that the consecutive sentences together created a total term of imprisonment outside of the Guidelines range in CR 112-176. (Doc. no. 1-1, p. 35)  The sixty-month sentence in CR 112-176 was within the Guidelines range and well below the twenty-year statutory maximum for Count Ten.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we 'ordinarily . . . expect a sentence within the Guidelines range to be reasonable.'" (citation omitted).)

In any event, Mr. Johnson did request Judge Bowen consider running the revocation sentence concurrent with the sixty-month sentence in CR 112-176.  Id. at 18.  However, the government opposed that suggestion, pointing out the Guidelines stated the sentences shall be served consecutively.[2]  Id. at 19.  In imposing consecutive sentences for the two separate cases, Judge Bowen explained he had considered Petitioner's lengthy involvement in drug

---

[2] U.S.S.G. § 7B1.3(f) states:

Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

trafficking, years in fugitive status, prior benefit of a sentence reduction for a prior conviction, and concluded, "[Petitioner] has, essentially, disregarded, disrespected, and essentially, trashed all of the opportunities that have been extended in his direction."  Id. at 21.

Under these circumstances, Petitioner was not prejudiced by Mr. Johnson's performance related to sentencing issues, and all of Petitioner's claims in Ground Two fail.

### E.      Petitioner Is Not Entitled to Relief on Ground Three.

In his final ground for relief, Petitioner contends he was erroneously designated a career offender under § 4B1.1 of the Guidelines because he was last imprisoned for a 1990 federal drug conviction on August 28, 1996, more than fifteen years before the commencement in October 2011 of the offenses forming the basis for his convictions in CR 112-176.  (Doc. no. 1-1, p. 39.)  Respondent does not contest the fifteen-year window when counting prior convictions, but does contest Petitioner's calculation of the fifteen years running from October 2011, rather than May 2011 as stipulated in Petitioner's Plea Agreement.  (Doc. no. 3, p. 29); Plea Agreement, p. 2.

### 1.      Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal."  Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."  United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual

development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion.  United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987).   Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack.  Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).   However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings, Massaro v. United States, 538 U.S. 500, 509 (2003).

Therefore, other than an ineffective assistance of counsel claim, for the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains.  Brown, 720 F.3d at 1333; Montano, 398 F.3d at 1280.  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of

justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin v. Perkins, 569 U.S. 383, 395 (2013) (internal quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

### 2. Ground Three Is Procedurally Defaulted Because Petitioner Did Not Raise It on Direct Appeal.

Petitioner has not shown a sentencing error constituting a fundamental defect such that his career offender claim would be reviewable in these § 2255 proceedings.  His concurrent sixty-month sentences did not exceed the statutory maximum of five and twenty years, respectively, for the two counts to which Petitioner pled guilty.  Thus his Guideline challenge raised in Ground Three is defaulted.  See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid.") Although an ineffective assistance of counsel claim may serve as "cause" for failing to raise an otherwise procedurally barred claim, Murray, 477 U.S. at 488, as discussed in detail herein, Petitioner has not presented any such valid ineffective assistance claims.  Nor can Petitioner satisfy the demanding actual innocence standard because by his own testimony at

the Rule 11 proceedings, he admitted his participation in the drug and money laundering conspiracies to which he pled guilty.

### 3. Even if Petitioner Could Escape the Bar to His Ground Three Claim That He Should Not Have Been Designated a Career Offender, His Claim Is Without Merit.

Petitioner was classified as a career offender within the meaning of U.S.S.G. § 4B1.1 because (1) he was at least eighteen years old at the time he committed the instant controlled substance offense; and (2) he had previously been convicted of two controlled substance offenses, as evidenced by his two prior cases in the Southern District of Georgia. PSI ¶ 46. Petitioner does not contest the existence of the prior drug convictions or his release date for the oldest conviction of August 28, 1996, but rather he contests that the oldest conviction falls within the fifteen-year window required to count a prior offense toward the career offender designation. Petitioner bases his argument on the contention that the instant drug offense to which he pleaded guilty commenced in October 2011, more than fifteen years and one month after his release from incarceration on the oldest conviction on August 28, 1996. (Doc. no. 1-1, p. 39.)

The underlying premise of Petitioner's argument fails because as set forth in his Plea Agreement, the offenses to which he pleaded guilty began "in or about May 2011." Plea Agreement, p. 2; see also CR 112-176, doc. no. 26, pp. 2-5. Additionally, Judge Bowen reviewed the May 2011 dates with Petitioner at the Rule 11 proceeding, confirmed Petitioner had his own copy of the indictment to study, and confirmed Petitioner had reviewed it with Mr. Johnson. Rule 11 Tr. 5-7. Despite these sworn affirmations to Judge Bowen the offense commenced in or about May 2011, Petitioner now contends, without any support, the current offenses to which he pleaded guilty commenced in October 2011.

SA Rhodes did testify at the Rule 11 proceeding that a California ATF agent contacted him in October 2011 and stated he had been working the case. Rule 11 Tr. 14. SA Rhodes also testified ATF seized four parcels between October 2011 and January 2012. This testimony does not change the superseding indictment's statement that the conspiracies began "in or about May 2011," which Petitioner agreed to without objection as part of the Rule 11 proceeding. Any offense committed in May through August 27, 2011 occurred less than fifteen years after Petitioner's release from incarceration on August 28, 1996, and thus the career offender designation under U.S.S.G § 4B1.1 is proper for Petitioner. Accordingly, Petitioner is not entitled to relief on Ground Three.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of April, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA